FILED

2016 Aug-31  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JONATHAN GREGORY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  2:15-cv-00781-JHE |
| | ) | |
| SELECT PORTFOLIO SERVICING, INC., | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiffs Jonathan and Amy Gregory initiated this action in the Circuit Court of Jefferson

County, Alabama, against Defendants Select Portfolio Servicing, Inc. ("SPS"); Bank of America,

NA; and Deutsche Bank National Trust Company ("Deutsche Bank"), asserting federal claims

for violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act

("RESPA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act

("FDCPA"), along with state-law claims for negligence, wantonness, unjust enrichment,

wrongful foreclosure, slander of title, breach of contract, fraud, "false light" invasion of privacy,

defamation, and declaratory relief.  (Doc. 1-1).  On May 8, 2015, the three defendants removed

the case to this Court and moved to dismiss.  (Docs. 1, 7, & 8).  Those motions were mooted

when the Gregorys filed an unopposed amended complaint on July 6, 2015.  (Docs. 18 & 19).

On July 20, 2015, Defendants SPS and Deutsche Bank (collectively, "Defendants") moved to

dismiss all of the Gregorys' claims except Count VI for Breach of Contract.  (Doc. 22).  On

August 10, 2015, the Gregorys responded in opposition, (doc. 26), and Defendants replied on

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 19).

August 17, 2015, (doc. 27).   The motion is fully briefed and ripe for review.   For the reasons stated more fully below, the motion to dismiss is **GRANTED**.

## I. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).   Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."   Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).   A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).   The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is

a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.

## II. Analysis

Defendants have moved for dismissal of all but Count VI of the fourteen counts of the Gregorys' amended complaint. (Doc. 22 at 1). The Gregorys, however, did not respond to arguments on several counts, which are deemed abandoned. After a general discussion of preemption under the FCRA, the remaining claims will be addressed in turn.

### A. Abandonment of Claims

The Gregorys did not respond to Defendants' arguments regarding Count III (Unjust Enrichment), Count VIII (False Light Invasion of Privacy), Count IX (Defamation, Libel, and Slander), and Count XIV (Declaratory Relief), (*see* doc. 26), and Defendants assert this alone is grounds for dismissal of these claims, (doc. 27 at 2) (citing *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000)). Because the Gregorys did not attempt to defend their claims against Defendants' arguments, Counts III, VIII, IX, and XIV are dismissed. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *6 (N.D. Ala. Jan. 27, 2016); *Boyd v. Daniels*, No. 2:13-CV-354-MEF, 2014 WL

3

1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, No. CV-13-S-695-NE, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (dismissing claims on motion to dismiss for failure to respond); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (dismissing undefended claims on summary judgment)); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

## B.  FCRA Preemption

Defendants contend all of the state-law claims—to the extent they are based on alleged inaccurate credit reporting—are preempted by 15 U.S.C. § 1681t(b)(1)(F) of the FCRA. (Doc. 22 at 5-8).  In response, the Gregorys make a series of often inapplicable arguments based, at many points, on inapplicable or outdated cases.  (Doc. 26 at 13-22).[2]  Therefore, the analysis below will first address the Gregorys' argument piece by piece (explaining why the cases cited do not support their conclusion) then will analyze the preemption issue separately.

### 1.  The Gregorys' Arguments

First, the Gregorys address a case Defendants do not rely on, arguing the opinion was vacated on reconsideration, invalidating its holding that state-law claims are preempted because §1681t "superseded" the FCRA's other less expansive provision, § 1681h(e).  (Doc. 26 at 15) (discussing *Jaramillo v. Experian*, 155 F. Supp. 2d 356 (E.D. Pa. 2001)).  However, not only do Defendants never cite the *Jaramillo* case, but this Court's analysis below does not rely on it.

---

[2] The Gregorys' first argument is that there is a private right of action under § 1681s-2(b), (*id.* at 13-15); however, Defendants explicitly acknowledge such a right of action.  (Doc. 22 at 27) ("[A] consumer only has a private right of action against a furnisher of information for violations of 15 U.S.C. § 1681s-2(b).").

Next, the Gregorys assert many courts have refused to dismiss "negligent credit reporting" claims and, in support, append a string cite of cases addressing (1) the wrong preemption provision (§ 1681h(e) not § 1681t), (2) the separate issue of complete preemption for removal purposes, or (3) issues other than preemption.  (Doc. 26 at 16-17).  The first four cases the Gregorys cite are inapplicable because they all address § 1681h(e), not § 1681t (the provision whose preemptive scope Defendants have invoked).  *See Williams v. Experian Info. Sols., Inc.*, No. 2:02-CV-38 TJW, 2002 WL 31133235, at *1 (E.D. Tex. Aug. 6, 2002) ("Section 1681h(e) does not protect a person who furnishes inaccurate information to consumer reporting agencies or others from civil liability, generally."); *Whitesides v. Equifax Credit Info. Servs., Inc.*, 125 F. Supp. 2d 807, 811 (W.D. La. 2000) (holding § 1681h(e) did not cover the claims asserted); *McAnly v. Middleton & Reutlinger, P.S.C.*, 77 F. Supp. 2d 810, 814-15 (W.D. Ky. 1999) (same); *Yeager v. TRW, Inc.*, 984 F. Supp. 517, 522 (E.D. Tex. 1997) (applying § 1681h(e)).

In the next case the Gregorys cite, *Brown v. Bank One Corp.*, No. 01 C 4698, 2002 WL 31654950 (N.D. Ill. Nov. 22, 2002), the plaintiff did not dispute the preemption argument but sought leave to amend the complaint to allege facts not covered by the FCRA.  *Id.* at *3.  On that basis, the court found amendment was not futile.  *Id.*  That holding does not support the proposition state-law claims for "defamation and negligent enablement of the imposter" are not preempted by § 1681t.  Regarding claims for "invasion of privacy, etc.," the Gregorys again cite the inapplicable *Whitesides* and *McAnly* cases, along with a case addressing removal, *Sehl v. Safari Motor Coaches, Inc.*, No. C 01-1750 SI, 2001 WL 940846, at *6 (N.D. Cal. Aug. 13, 2001) ("The issue before this Court is not whether the libel claim in this complaint is preempted."); a case that never addresses preemption at all, *Olexy v. Interstate Assurance Co.*, 113 F. Supp. 2d 1045 (S.D. Miss. 2000); and a case later overruled by its circuit court,

*Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000) (finding claims for negligence, defamation, or invasion of privacy were not "requirement[s] or prohibition[s]" covered by § 1681t(b)(1)(F),[3] a rationale directly at odds with *Purcell v. Bank of America*, 659 F.3d 622, 626 (7th Cir. 2011), which held the FCRA preempted state-law claims for defamation, invasion of privacy, or negligence in reporting of information to consumer reporting agencies). None of these cases support the Gregory's conclusion.

The next three paragraphs of the Gregorys' argument assert there is no preemption under various circumstances, citing cases that (1) are from before the amendment of the relevant provision, (2) address complete preemption for removal purposes, or (3) do not support the proposition asserted. (Doc. 26 at 17-19). The first three cases the Gregorys cite were all decided before the 1997 amendment to § 1681t that added the subsection (b) at issue here. *See Credit Data of Arizona, Inc. v. State of Ariz.*, 602 F.2d 195, 197 (9th Cir. 1979) (addressing § 1681t without reference to a subsection (b) because the pre-1997 § 1681t did not have one); *Hughes v. Fid. Bank*, 709 F. Supp. 639, 640-41 (E.D. Pa. 1989) (not only addressing the pre-1997 version of § 1681t, but also addressing it in the context of complete preemption for removal purposes); *Equifax Servs., Inc. v. Cohen*, 420 A.2d 189, 211 (Me. 1980) (applying pre-1997 § 1681t).

The second of the three paragraphs appends a string cite of eight inapplicable complete-preemption removal cases finding only that the FCRA does not so completely preempt state-law claims that they become removable federal claims when alleged in state court. *See Sehl*, No. C 01-1750 SI, 2001 WL 940846, at *6; *Harper v. TRW, Inc.*, 881 F. Supp. 294, 299-300 (E.D. Mich. 1995); *Rule v. Ford Receivables, Inc.*, 36 F. Supp. 2d 335, 337-39 (S.D.W. Va. 1999); *Watkins v. Trans Union, L.L.C.*, 118 F. Supp. 2d 1217, 1223 (N.D. Ala. 2000); *Swecker v. Trans*

---

[3] The *Dornhecker* court's underlying argument is addressed in the analysis below.

*Union Corp.*, 31 F. Supp. 2d 536, 540 (E.D. Va. 1998); *Saia v. Universal Card Servs. Corp.*, No. 00-1295, 2000 WL 863979, *3 (E.D. La. June 27, 2000); *Sherron v. Private Issue by Discover, a Div. of Novus Servs., Inc.*, 977 F. Supp. 804, 806 (N.D. Miss. 1997); *Hughes v. Fid. Bank*, 709 F. Supp. at 640-41.   In fact, *Watkins v. Trans Union, L.L.C.* explicitly discusses the difference between "complete preemption" and "defensive preemption" and declines to rule on the latter. 118 F. Supp. 2d at 1219-20 ("Complete preemption of state law by federal law is jurisdictional in nature; it allows a defendant to halt state adjudication of a state cause of action by removing the action to federal court.  Defensive preemption of state law by federal law, on the other hand, 'operates to dismiss state claims on the merits and may be invoked in either federal or state court.'") & 1223 ("Because this court finds that Congress did not intend to make state law causes of action defensively preempted by the FCRA removable to federal court, it does not have removal jurisdiction over this action. The court need not reach the issue of whether plaintiff's claims are in fact defensively preempted.").   *Accord Swecker*, 31 F. Supp. 2d 536, 540 (remanding the case to state court after not finding "complete preemption" and concluding regarding "defensive preemption":  "Although some or all of his claims . . . may be preempted by the FCRA, this is a defense which the [state court] may consider as to the merits of the case."); *Sherron, Inc.*, 977 F. Supp. at 806 (remanding to state court and explicitly stating the court "need not decide whether the plaintiff's claims are preempted by federal law").

The string cite is followed by a concluding (and out-of-context) quote from *Sehl*: "***Furnishers are still subject to state statutes which are <u>not inconsistent with the FCRA</u>.***" (Doc. 26 at 18) (slightly, but nonsubstantively, misquoting *Sehl*, No. C 01-1750 SI, 2001 WL 940846, at *6 ("[F]urnishers of information are still subject to state statutes which are not inconsistent with the FCRA.") (citing 15 U.S.C. § 1681t(a))).  The problem with quoting just this

language is that the *Sehl* court noted immediately following it that § 1681t(b) lists exceptions to that broad statement: "Therefore, states cannot regulate any subject matter relating to § 1681s-2 even if it is consistent with the FCRA . . . ."  No. C 01-1750 SI, 2001 WL 940846, at *6.  This is the exact opposite proposition for which the Gregorys cite this case.

The last of the three paragraphs argues courts have found the FCRA is an exclusive remedy "<u>only</u> if there is no statute or common law rights or cause of action" and the state-law claims here supplement, and are consistent with, the FCRA.  (Doc. 26 at 18) (citing *Mathews v. Gov't Employees Ins. Co.*, 23 F. Supp. 2d 1160, 1165 (S.D. Cal. 1998); *Retail Credit Co. v. Dade Cty., Florida*, 393 F. Supp. 577, 585 (S.D. Fla. 1975); S.Rep. No. 517, 91st Congress 1st Session 8 (1969)).  However, the *Mathews* case concludes a common-law negligence claim may not be raised to vindicate a statutory right that did not exist at common law and has its own comprehensive statutory remedies to vindicate it.  *See* 23 F. Supp. 2d at 1165.  That is not the issue here.  The issue here is whether § 1681t(b)(1)(F) preempts state-law claims predicated on the same facts as those addressed by § 1681s-2 of the FCRA.  As noted in the *Sehl* case, § 1681t(b) explicitly preempts state laws to the extent they may "regulate any subject matter relating to § 1681s-2 even *if it is consistent with the FCRA* . . . ."  No. C 01-1750 SI, 2001 WL 940846, at *6 (emphasis added).  Therefore, the *Retail Credit Corp.* court's discussion of consistency with the FCRA before the 1997 amendment is irrelevant to the discussion of whether subsection (b), added in the 1997 amendment, explicitly preempts certain state laws.

In the final paragraphs of their preemption argument, the Gregorys confusingly assert Defendants rely on "*Sigler* from the Middle District of Alabama" instead of any Northern District of Alabama cases.  (Doc. 26 at 19).  First, Defendants never cite a "*Sigler*" case, (*see* doc. 22; doc. 27 at 3 n.2), and, since the Gregorys never include a citation either, (doc. 26 at 12

& 19), the "*Sigler*" case is, in fact, never cited in the briefs.  Second, contrary to the Gregorys'

assertion, Defendants cite two cases from this district in their motion.  (*See* doc. 22 at 7-8).

Lastly, the Gregorys also include citations to two cases from this district, both of which (being

their first cases cited on point) will be further addressed in the analysis below.  (Doc. 26 at 19-

20) (citing *Woltersdorf v. Pentagon Federal Credit Union*, 320 F. Supp. 2d 1222, 1224 (N.D.

Ala. 2004), and *McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335 (N.D. Ala. 2004)).[4]

### 2. Analysis of Preemption Issue

The FCRA contains two preemption provisions, 15 U.S.C. § 1681h(e)[5] and 15 U.S.C. §

1681t(b)(1)(F), and their overlap has caused a split among the courts, resulting in several

different approaches to the issue.[6]

The FCRA's original preemption clause, § 1681h(e), states:

---

[4] The Gregorys also quote extensively from *Watkins*, (doc. 26 at 20-21), but, as discussed above, that case is a complete-preemption removal case that explicitly stated it "need not reach the issue of whether plaintiff's claims are in fact defensively preempted."  118 F. Supp. 2d at 1223.

[5] Section 1681h(e) has sometimes been referred to not as a preemption provision but as a "quid pro quo" grant of qualified immunity for the actions required by the statute.  *See Whitesides*, 125 F. Supp. 2d at 811 (citing *McAnly*, 77 F. Supp. 2d at 814, and *Yeager*, 984 F. Supp. at 522).  The issue of how they overlap is the same, regardless of their label.

[6] As is apparent from the plaintiffs and defendants citing conflicting cases, this district has applied different approaches to this issue.  *Compare Williams v. Student Loan Guarantee Foundation of Arkansas*, No. 5:12-CV-02940-JHE, 2015 WL 241428, at *3 (N.D. Ala. Jan. 20, 2015) (finding state-law claims preempted by § 1681t(b)(1)(F)); *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, No. 1:12-CV-1745-VEH, 2013 WL 3242739, at *13 (N.D. Ala. June 26, 2013) ("[P]reemption [is] applicable to all state law claims (i.e., regardless of any alleged willfulness or maliciousness) arising out of false reports to credit agencies." (citing *Purcell v. Bank of America*, 659 F.3d 622, 626 (7th Cir. 2011))), *and Schlueter v. BellSouth Telecommunications*, 770 F. Supp. 2d 1204, 1210 (N.D. Ala. 2010) (holding § 1681t(b)(1)(F), and not § 1681h(e), dealt with furnishers' duties of reporting and investigation as were the basis of plaintiffs' state-law claims), *with Vickie M. Champion v. Global Credit Card Servs., LLC*, No. 2:12-CV-01966-S, 2012 WL 3542225, at *6 (N.D. Ala. Aug. 15, 2012) ("[Section] 1681h(e) governs the question of preemption for the false light [invasion of privacy] claim in the present case"), *and Woltersdorf v. Pentagon Federal Credit Union*, 320 F. Supp. 2d 1222, 1224 (N.D. Ala. 2004) (holding § 1681t(b)(1)(F) only applies to actions taken after notice).

> Except as provided in sections 1681n and 1681*o* of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report[,] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  In the FCRA's later added section regarding its relation to State laws, Congress stated:

> No requirement or prohibition may be imposed under the laws of any State—
>
> > **(1)** with respect to any subject matter regulated under-- . . .
> >
> > > **(F)** section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b).  "The tension between these two provisions results from the fact that § 1681(h)(e) permits state law tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while § 1681t(b)(1)(F) prohibits all state law claims covered by § 1681s-2."  *Morgan v. HSBC Mortgage Servs., Inc.*, 930 F. Supp. 2d 833, 838 (E.D. Ky. 2013).

The interpretations that have arisen to deal with this tension are (1) the temporal approach, holding § 1681t(b)(1)(F) preempts only claims based on actions occurring after the furnisher has notice of a dispute, *see, e.g.*, *Woltersdorf v. Pentagon Federal Credit Union*, 320 F. Supp. 2d at 1224; (2) the statutory approach, holding § 1681t(b)(1)(F) only preempts state statutes and does not apply to state common-law claims, *see, e.g.*, *Baker v. Gen. Elec. Capital, Corp.*, 819 F. Supp. 2d 1332, 1338 (M.D. Ga. 2011); *McCloud*, 309 F. Supp. 2d at 1341; and

(3) the total-preemption approach,[7] holding § 1681t(b)(1)(F) preempts all state-law claims regarding the responsibilities of furnishers to credit reporting agencies regulated by § 1681s-2. The last category contains two similar but conceptually different subgroups: those holding all state-law claims preempted because § 1681t(b)(1) superseded and implicitly repealed § 1681h(e), *see, e.g.*, *Jaramillo v. Experian Info. Solutions, Inc.*, 155 F. Supp. 2d at 361; and those holding all state-law claims preempted because § 1681t(b)(1) does not conflict at all with the earlier provision and both can be applied without the unfavored step of finding implicit repeal, *see, e.g.*, *Purcell v. Bank of America*, 659 F.3d at 625.  The Eleventh Circuit has not addressed the issue.

Defendants assert the third approach should apply, citing, among others, *Purcell v. Bank of America*; *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011) (adopting the *Purcell* court's reasoning); *Dial v. Midland Funding, LLC*, 2015 U.S. Dist. LEXIS 21099, *18 (N.D. Ala. Feb. 23, 2015); and *Williams v. Student Loan Guaranty Foundation of Arkansas*. (Doc. 22 at 7-8).  The Gregorys countered, citing *Woltersdorf v. Pentagon Federal Credit Union* and *McCloud v. Homeside Lending*.  (Doc. 26 at 19-20).  The Gregorys, however, do not argue for a particular approach to the statute as long as their claims are not preempted, as evidenced by their citation to *Woltersdorf* (adopting the temporal approach) and *McCloud* (explicitly rejecting the temporal approach and adopting the statutory approach).   As in previous cases, the undersigned remains persuaded by those courts adopting the total-preemption approach.

---

[7] This should not be confused with the complete preemption doctrine in the removal context.  For removal purposes, "complete preemption" is jurisdictional and occurs when a federal statute's "'extraordinary pre-emptive power . . . converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Watkins*, 118 F. Supp. 2d at 1219 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  Total preemption (which is "total" only in contrast to the temporal and statutory approaches) is merely a form of defensive preemption, which "operates to dismiss state claims on the merits and may be invoked in either federal or state court." *Id.*

In *Purcell v. Bank of America*, the Seventh Circuit Court of Appeals addressed the different approaches and, unlike courts adopting the other approaches, "[did] not perceive any inconsistency between the two statutes." 659 F.3d at 625.  The court reasoned:

> Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims.  Section 1681h(e) does not create a right to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe.  Section 1681h(e) was enacted in 1970.  Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code.  The same legislation also added § 1681s-2.  The extra federal remedy in § 1681s-2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges.  Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.

*Id.*[8]

Further, § 1681t(b)(1)(F) does not repeal § 1681h(e) by implication because the two provisions are not coextensive.  *Id.*  "Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253 (1992).  In this vein, the *Purcell* court reasoned:

> There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute

---

[8] This reasoning requires the assumption § 1681t(b) applies to common-law claims.  The *Purcell* court disregarded the statutory approach to resolving the "conflict" between the preemption provisions because to do so would bring the Seventh Circuit into conflict with the Second Circuit who had already held in *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009), that § 1681t(b) applies to both common-law and statutory claims.  *Purcell*, 659 F.3d at 624.  The *Premium Mortgage* court had adopted the reasoning of *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504 (1992), stating:  "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Premium Mortgage*, 583 F.3d at 106 (quoting *Cipollone*, 505 U.S. at 521).  The *Cipollone* interpretation was around four years before the 1996 addition of § 1681t(b) so Congress would certainly have been aware identical language would be similarly interpreted.

> setting a speed limit of 55.  It is easy to comply with both: don't drive more than 55 miles per hour.  Just as the later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law.

659 F.3d at 625.  Section 1681h(e) only preempts certain claims without certain specific intent allegations based on information disclosed under §§ 1681g, 1681h, and 1681m.  Section 1681t(b)(1) does not repeal § 1681h(e), it merely further raises the preemption bar with regard to certain subparts of §§ 1681g, 1681h, and 1681m.[9]

Lastly, the *Purcell* court notes the flaw in the rationale that § 1681t(b)(1)(F) cannot preempt all state-law claims because it is a general preemption provision and § 1681h(e) is a more specific provision addressing "action[s] in the nature of defamation, invasion of privacy, or negligence."  659 F.3d at 625-26.  This argument ignores the fact that, although § 1681h(e) may be more specific as to the state claims preempted, § 1681t(b)(1)(F) is more specific regarding the specific provision of the federal statute preempting the state claims.  *Id.*  Both claims are general in the sense the other is specific; therefore, "[t]he specific-over-general canon gets us nowhere and does not offer a good reason to depart from the norm that courts do not read old statutes to defeat the operation of newer ones."  *Id.*

In the *Woltersdorf* case, whose approach is one of the ones the Gregorys propose, the Court held 15 U.S.C. § 1681t(b)(1)(F) only applies to actions taken after notice of a dispute

_____

[9] This is true for all of § 1681t(b)(1)'s subsections:   § 1681t(b)(1)(C), (D), and (I) preempt only in cases with information disclosed under subsections (a), (b), (d), and (h) of § 1681m but not subsection (g); § 1681t(b)(1)(F) only overlaps where the claim is against a furnisher and based on information disclosed under the listed sections; § 1681t(b)(1)(G) preempts only in cases with information disclosed under § 1681g(e) but not under § 1681g(a), (f), and (g); and § 1681t(b)(1) does not preempt any claims where information is disclosed under 1681h.  Therefore, because § 1681h(e) still applies to some of each of its listed sections, § 1681t(b)(1) does not render any particular language in § 1681h(e) "wholly superfluous."  *See Germain*, 503 U.S. at 253.

because § 1681t(b)(1)(F) preempts state laws "with respect to any subject matter regulated under . . . § 1681s-2" and only § 1681s-2(b), addressing furnishers' duties after notice, is an available basis for private civil liability under §§ 1681n and 1681*o*.  320 F. Supp. 2d at 1224 & 1225 n.5.  This analysis does not address why the "plain language" of § 1681s-2(b), only applying after notice, overrides the plain language of § 1681t(b)(1)(F) that explicitly applies "with respect to any subject matter regulated under . . . *section 1681s-2 of this title*, relating to the responsibility of persons who furnish information to consumer reporting agencies."  Section 1681t(b) addresses the preemption of state-law claims, not the federal private right of action provided by §§ 1681n and 1681*o* so there is no reason to base its operation on the scope of those provisions where the plain language of § 1681t(b)(1)(F) clearly applies to all of the subject matter regulated by § 1681s-2.  Moreover, the temporal approach leads to an odd practical result, in which furnishers are provided more protection after they receive notice of a dispute (full immunity from state-law suit) than the protection they are provided before they have notice (immunity only from certain state-law claims not based on allegations of malice or willfulness).  *See Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1374-75 (N.D. Ga. 2004).  That anomalous result pulls the temporal approach even more out of line with the expected intent of Congress.  *Id.*

Similarly, to adopt the statutory approach, the other approach the Gregorys propose, the court must conclude the *Cipollone* reasoning regarding the phrase "no requirement or prohibition" does not apply to the nearly identical language in §1681t(b).  Neither *Vickie M. Champion* nor *McCloud v. Homeside Lending*, upon which it is based, addressed the *Cipollone* case.  The *Baker v. General Electric Capital* court's attempt to do so relies heavily on its reluctance to adopt a reasoning leading to implicit repeal.  *See* 819 F. Supp. 2d at 1337.

14

However, as addressed above, the provisions may overlap, but they do not implicitly repeal one another.   As a result, there is no reason to construe "no requirement or prohibition" more narrowly than Congress presumably intended.

The other bases for the statutory approach are similarly unpersuasive.  In addition to the above, the *Baker* court's bases for its adoption of the statutory approach was its findings that, because common law does not have an effective date or "provisions," Congress's exemptions of state laws effective before a certain date in § 1681t(b)(1)(B) and (E) and of "any provision of the laws of any State" regulating certain insurance matters in § 1681t(b)(3)(C) was indicative of Congress's intent for the entire section to only address state statutes.  819 F. Supp. 2d at 1336. The latter basis (that common law does not have "provisions") is simply incorrect.  *See Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1429 (2014) ("It is routine to call common-law rules 'provisions.'").  Similarly, the *Baker* court's conclusion common-law claims do not have effective dates ignores the fact common-law rules are, as the provision states, "in effect." *See Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 68 (2002) (referring to "existing state common-law rules in effect on the effective date" of a federal statute); *Flynn v. Sav. & Profit Sharing Plan for Employees of Republic of Texas Corp.*, 558 F. Supp. 861, 865 (N.D. Tex. 1982) (referring to federal common law as "the law in effect on that date").  Lastly, even the *Baker* court acknowledged the exemption of specific state statutory provisions from preemption, as cited by other courts adopting the statutory approach, was not inconsistent with § 1681t(b)'s application to common-law claims because "an equally plausible explanation is that Congress simply chose not to exempt any common-law tort causes of action from the statute's preemptive reach."  819 F. Supp. 2d at 1336.  None of these arguments provide a basis for

disregarding the broad language Congress used in § 1681t(b), which is consistent with the "new plan" imposed by the amendment containing it, *see Purcell*, 659 F.3d at 625.

The Second Circuit, the only other United States Circuit Court to address the issue directly, also adopted the *Purcell* reasoning in *Macpherson v. JPMorgan Chase Bank, N.A. See* 665 F.3d at 48. The undersigned is, likewise, still persuaded by the *Purcell* court's reasoning. Accordingly, § 1681t(b)(1)(F) preempts the Gregory's state-law claims to the extent they address the subject matter regulated under § 1681s-2. To the extent they are preempted, such claims are dismissed.

## C. Negligence (Count I) and Wantonness (Count II)

"To establish negligence [under Alabama law], the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. To establish wantonness [under Alabama law], the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Lemley v. Wilson*, 178 So. 3d 834, 841-42 (Ala. 2015) (internal quotation marks, citations, and emphasis omitted). Defendants contend there is no duty upon which negligence or wantonness can be based arising out of lending or loan servicing. (Doc. 22 at 9-10). The Gregorys assert their negligence and wantonness claims are supported by the duties created under the federal RESPA statute. (Doc. 26 at 25-28).[10]

---

[10] The Gregorys also assert the existence of a "negligent misrepresentation" claim under Alabama law, (doc. 26 at 26); however, it is unclear how this supports their general negligence count because a "negligent misrepresentation" claim is a species of fraud, *see Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 235 (Ala. 2014) ("A negligent misrepresentation constitutes legal fraud.") (citing *Ala. Code* § 6-5-101). Because the Gregorys have already explicitly asserted a count for negligent misrepresentation in Count VII, (doc. 18 at ¶ 61), any assertion of the same claim here is redundant.

However, the Gregorys are incorrect in their assertion their negligence claim may be based on the RESPA statute.  While it is true RESPA does not preempt common-law state claims, *see* 12 U.S.C. § 2616, the Gregorys are not arguing they have a state-law claim that is otherwise consistent with RESPA; they are arguing they have a state common-law claim *based* on RESPA's statutory duties where no duty would otherwise exist.  The issue then is not whether RESPA preempts state law but whether state law allows such a claim.  Alabama does not.

In *Johnson v. Brunswick Riverview Club, Inc.*, 39 So. 3d 132 (Ala. 2009), the plaintiff attempted to hold an employer liable for negligent hiring, training, and supervising its employees for the employee's negligent conduct in carrying out duties under the Alabama Dram Shop Act. *Id.* at 139.  First, the court noted "[i]t is well established that Alabama does not recognize a common law cause of action for negligence in the dram shop context," *id.*, and that the Dram Shop Act, creating a new remedy that did not exist at common law, was therefore an exclusive remedy, *id.* (citing *Williams v. Reasoner*, 668 So. 2d 541, 542-43 (Ala. 1995) (declining to extend the scope of a statutory remedy that did not exist at common law)).  Because the claim sought "a remedy directly related to the alleged unlawful dispensing of alcohol [for which there is no common-law remedy], and it attempt[ed] to do so outside the Dram Shop Act [the exclusive remedy for such violations]," the trial court properly entered summary judgment on the claim. *Id.* at 140.  *Accord Guy v. Alabama Power Co.*, No. 2:13CV8-MHT, 2013 WL 3929858, at *4 (M.D. Ala. July 29, 2013) ("[The plaintiff] seeks to engraft a negligence cause of action onto a statute that already includes its own set of remedies and means of obtaining them and a statute, in the absence of which, no arguably comparable common-law claim would exist. The court is not persuaded that he may do so.") (citing *Johnson* in the context of a plaintiff using a Uniformed Services Employment and Reemployment Rights Act as the underlying tort for a

negligent hiring, training, and supervision claim).  *Cf. Westenhaver v. Dunnavant*, 143 So. 823, 823 (Ala. 1932) ("[S]tatutory remedies for rights unknown to the common law are to be strictly construed."); *Matthews*, 23 F. Supp. 2d at 1165 (concluding, based on California law, that a common-law negligence claim may not be raised to vindicate a statutory right that did not exist at common law and has its own comprehensive statutory remedies to vindicate it).

The Alabama Supreme Court has held no claim for negligent loan servicing exists in Alabama.  *See U.S. Bank Nat. Ass'n v. Shepherd*, No. 1140376, 2015 WL 7356384, at *12-*13 (Ala. Nov. 20, 2015) (stating "the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim," then quoting, with approval, the state-law prediction of the court in *James v. Nationstar Mortgage, LLC,* 92 F. Supp. 3d 1190, 1198-1200 (S.D. Ala. 2015), that "no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law").[11]  The Gregorys attempt to circumvent this fact by alleging their claims are based on the duties created by RESPA, but, to paraphrase the *Guy* court, they may not "engraft a negligence cause of action onto a statute that already includes its own set of remedies and means of obtaining them and a statute, in the absence of which, no [] comparable common-law claim would exist."  No. 2:13CV8-MHT, 2013 WL 3929858, at *4. *See also* 12 U.S.C. § 2605(f) (providing certain damages for violations of RESPA's loan servicing and escrow administration provisions).  Therefore, any allegations in support of their negligence claim that are based on RESPA or the obligations arising from the mortgage contracts are not viable claims under Alabama law.  (As discussed in the previous section, they are also preempted to the extent they address the subject matter regulated under § 1681s-2.)

---

[11] Although *Shepherd* only specifically adopted the *James* court's description of Alabama law regarding wanton mortgage servicing claims, *see* No. 1140376, 2015 WL 7356384, at *13, the reasoning of both courts is similarly applicable to the duty element of a negligence claim, *see id.* at *12.

Specifically, the Gregorys allege:

> The Defendants negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiffs, negligently caused his property insurance to be canceled, negligently defaulted the Plaintiffs, negligently attempted a foreclosure sale on Plaintiffs' property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiffs' loan account and failing to remove the adverse reporting from Plaintiff's credit once they disputed the same.

(Doc. 18 at ¶ 29).  (*See also* doc. 18 at ¶ 33) (asserting the same allegations as the basis of the Gregorys' wantonness claim).  The allegation of negligent and wanton loan servicing clearly fails, as do the collection, property insurance, default, and foreclosure claims, all of which arise out of the obligations under the mortgage.  Essentially, the Gregorys are asserting Defendants negligently and wantonly serviced the mortgage by collecting on the mortgage contracts when they were not entitled to; causing the Gregorys' property insurance to be canceled by not paying it out of escrow, as required by the mortgage contracts; and declaring the Gregorys in default and instituting mortgage proceedings when the Gregorys were not in default under the mortgage contract.[12]

The allegation Defendants were negligent or wanton by failing "to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy," (doc. 26 at ¶¶ 29 & 33), is

---

[12] Although a claim exists in Alabama sometimes referred to as a "negligent foreclosure" claim, it is merely another name for the "wrongful foreclosure" claim asserted in the Gregorys' fourth count, addressed below.  *See Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (dismissing the plaintiffs' "negligent foreclosure" claim based on the law of "wrongful foreclosure").

preempted by the FCRA to the extent it is based on allegations involving information furnished to the credit reporting agencies and redundant of their abandoned defamation claim to the extent it asserts the information "disseminated to others" not falling under the FCRA was false.  The allegation Defendants were negligent or wanton by "failing to remove the adverse reporting from Plaintiff's credit once they disputed the same," (doc. 26 at ¶¶ 29 & 33), is also preempted by the FCRA because it alleges failure to perform a duty required under 15 U.S.C. § 1681s-2(b)(1).

Lastly, the Gregorys assert Defendants were negligent or wanton by failing "to properly train their employees on the thorough investigation of disputed accounts" and by failing "to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account."  (Doc. 26 at ¶¶ 29 & 33).  Both of these are statements of negligent training and supervision claims, which, under Alabama law, require the plaintiff show "(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately," *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009) (citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999), and *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001)).  The Gregorys do not allege facts to support any of the elements of this claim, but, most importantly, the underlying torts they allege are not viable claims in Alabama.  To the extent the Gregorys' allegation of failure to investigate involves the investigation required by § 1681s-2(b)(1), such a claim is preempted by the FCRA.  To the extent the Gregorys assert the employees did not properly handle the loan accounts or thoroughly investigate the disputed default (separate from Defendants' duties under the FCRA), they are alleging the employees committed negligent loan servicing on behalf of their employers.  This

20

tort not only does not exist under Alabama law, as discussed above, but the employees could not commit it separately from their employer, the party upon whom the mortgage actually places the duty, making this claim redundant of the nonexistent negligent loan servicing claim.

As a result, the Gregorys' have not stated a negligence or wantonness claim upon which relief may be granted, and Counts I and II are due to be dismissed.

**D. Wrongful Foreclosure (Count IV)**

Defendants contend the Gregorys' claim for wrongful foreclosure must be dismissed, pointing to the fact the foreclosure never occurred and asserting there is no such thing as an "attempted" wrongful foreclosure under Alabama law.  (Doc. 22 at 12-13).  In response, the Gregorys cite *In re Sharpe*, 391 B.R. 117, 152 (Bankr. N.D. Ala. 2008), for the proposition "[t]he wrongful foreclosure cause of action in Alabama does not have specific elements" and requires only one of four disjunctive elements.  (Doc. 26 at 22-23).  The Gregorys conclude the argument with the conclusory assertion they "have sufficiently pled such claims to survive a motion to dismiss."  (*Id.* at 23).

The Gregorys, however, have not sufficiently alleged a claim for wrongful foreclosure. A "wrongful foreclosure" claim is "one where a mortgagee *uses the power of sale* given under a mortgage for a purpose other than to secure the debt owed by the mortgagor."  *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (emphasis added).  The Gregorys' amended complaint alleges the power of sale was used for a purpose other than to secure the debt owed because they were current on the debt at the time of the default and acceleration, (doc. 18 at ¶ 44), but they do not allege a foreclosure sale actually occurred, (*id.* at ¶¶ 22, 26, 27, 43, & 44);

therefore, the power of sale was never used for any purpose, much less for one "other than to secure the debt."[13]

Other Alabama federal district courts have consistently read the Alabama case law to the same conclusion. *See Hardy v. Jim Walter Homes, Inc.*, No. 06-0687-WS-B, 2007 WL 174391, at *6 (S.D. Ala. Jan. 18, 2007) ("Plaintiffs have cited no Alabama authority, and the undersigned has found none, under which the mere scheduling of a foreclosure sale, without more, has been found to constitute a mortgagee's exercise of the power of sale. A plain reading of that legal standard strongly suggests that it cannot, and that the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling."); *accord Duke v. JPMorgan Chase Bank Nat. Ass'n*, No. 2:14-CV-422-RDP, 2014 WL 5770583, at *5 (N.D. Ala. Nov. 5, 2014); *Selman v. CitiMortgage, Inc.*, No. 12-0441-WS-B, 2013 WL 838193, at *7 (S.D. Ala. Mar. 5, 2013); *McClung v. Mortgage Elec. Registration Sys., Inc.*, No. 2:11-CV-03621-RDP, 2012 WL 1642209, at *3 (N.D. Ala. May 7, 2012). *See also* Alabama Law of Damages § 33:9 (6th ed.).

Because the Gregorys' complaint alleges the foreclosure sale did not actually occur, they have failed to state a claim upon which relief may be granted, and their wrongful foreclosure claim seeking damages (Count IV) is due to be dismissed.

### E. Slander of Title (Count V)

The elements of a claim for slander of title under Alabama law are:

---

[13] While a prospective "wrongful foreclosure" claim seeking injunctive relief may be asserted in equity, *see Jackson*, 90 So. 3d at 171 ("If in any case it is attempted to pervert the power from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself, a court of equity will enjoin a sale or will set it aside if made."), the Gregorys do not seek such relief but, instead, seek "all natural, proximate and consequential damages due to [Defendants'] actions including an award of punitive damages . . . ," (doc. 18 at ¶ 45).

(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003).  Defendants contend the Gregorys' failure to allege special damages or "malice" is fatal to their claim.  (Doc. 22 at 13-15).  In response, the Gregorys state merely that they have pled they were the owners of the property, that SPS published in the newspaper that it was foreclosing on the Gregorys' property, and that publication of the notice of sale clouded their title.  (Doc. 26 at 29).

First, "[m]alice requires proof that the defendant intentionally disparaged the plaintiff's title to the property slandered or recklessly disparaged it without information sufficient to support a bona fide belief in the veracity of the disparaging statement.  In other words, if the defendant had probable cause for believing the statement, there can in law be no malice."  *Roden v. Wright*, 646 So. 2d 605, 611 (Ala. 1994) (internal quotation marks, brackets, and emphasis omitted).  While nothing in the Gregorys' conclusory argument explains how they have alleged facts to support a finding of malice, the amended complaint does contain sufficient factual allegations to infer the Gregorys were not in default, Defendants knew the Gregorys were not in default, and Defendants publicized the foreclosure sale anyway.  (*See* doc. 18 at ¶¶ 15-24).

However, the Gregorys have not alleged any special damages of the type necessary to allege a slander of title claim.

To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication 'interrupted, or injuriously affected, some dealing of the plaintiff with his property' or caused the plaintiff to incur expenses 'to relieve his right to the property from the damnifying effect of such false and malicious slander.'  Special damages must be 'distinctly and particularly set out' in the complaint, and '[a]n allegation of loss in general terms is not sufficient.'

*Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2013) (quoting *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913)).  The only damages the Gregorys claim from the allegedly false statements in the newspaper are a cloud on their title and damage to their reputations and to business relationships unrelated to the property.  (Doc. 18 at ¶¶ 23, 25, & 47).[14]  These allegations of damages unrelated to the Gregorys' title and dealings with the property are "insufficient to plead special damages because [they do not allege] the *unique* types of damage to someone's use of property that would support a slander of title claim . . . ."  *Rice v. JPMorgan Chase Bank NA*, No. 7:14-CV-00318-LSC, 2014 WL 3889472, at *9 (N.D. Ala. Aug. 5, 2014) (citing *Ebersole*) (emphasis in original).

As a result, the Gregorys have failed to state a claim upon which relief may be granted, and their claim for slander of title (Count V) is due to be dismissed.

### F.  Fraud (Count VII)

Under Alabama law, a plaintiff proves a claim for fraudulent misrepresentation by showing four elements:  "(1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance."  *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 725 (Ala. 2009).  In a complaint, the plaintiff must allege fraud with particularity sufficient to meet the heightened pleading standard under Rule 9(b).  The standard may be met by alleging:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

---

[14] Any alleged damages from information furnished to the credit bureaus are preempted by the FCRA.

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation marks omitted). Defendants contend the Gregorys have failed to allege their fraud claim with the particularity required under Rule 9(b), and have further failed to allege the claim substantively because they acknowledge the alleged misrepresentations occurred before the loan was transferred to Defendants and, therefore, they could not have relied on the alleged misrepresentations. (Doc. 22 at 15-18). The Gregorys set out substantially the same rules as above, then conclude with the conclusory statement they have met these standards and their claims for fraud should not be dismissed. (Doc. 26 at 30-32). They do not point to which allegations of the amended complaint satisfy their burden. (*See id.*).

In the amended complaint, the Gregorys allege Defendants "misrepresented that the loan was in default," disseminated inaccurate information regarding the default and the Gregorys' credit, and "made false and misleading statements as well as misrepresentations regarding the loan modification agreement, it [sic] terms, and is [sic] implementation." (Doc. 18 at ¶ 60). The first and second allegations are clearly insufficient because (1) the allegations affirmatively show the Gregorys never relied on the representation the loan was in default and fought Defendants on that point, (doc. 18 at ¶ 19), and (2) there is no allegation the Gregorys relied in any way on any "inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the [Gregorys'] credit history and credit," (doc. 18 at ¶ 60).

As for misrepresentations regarding the loan modification agreement, the Gregorys have not set out any of the specific allegations from *Brooks*: the only reference to the loan modification agreement's terms is the statement the Gregorys entered into such an agreement "wherein the terms of the loan were modified and the account was brought completely current." (Doc. 18 at ¶ 15). There is no statement of where and when any misrepresentations were made,

25

what exactly they were, or which person made them.   The amended complaint's general allegations, that "Defendants further made false and misleading statements as well as misrepresentations regarding the loan modification agreement, it [sic] terms, and is [sic] implementation," (doc. 18 at ¶ 60), are insufficient to allege fraud under Rule 9(b).

Moreover, the only allegations of reliance are of the Gregorys' reliance on alleged misrepresentations regarding the loan modification agreement causing them to "proceed[] with the execution of the loan modification agreement."   (Doc. 18 at ¶ 62).   The problem with this allegation is that the Gregorys allege they entered the loan modification agreement with Co-Defendant Bank of America, the loan servicer at the time, before the loan was assigned to Defendants.   (*Id.* at ¶¶ 15-16).   Therefore, the Gregorys have not alleged facts from which the Court could infer they reasonably relied on, and were harmed by, misrepresentations by Defendants.

Because they have failed to sufficiently allege a claim for fraudulent misrepresentation, procedurally or substantively, the Gregorys' claim for fraud (Count VII) is due to be dismissed.

### G.  Truth in Lending Act (Count X)

Regarding the Gregorys' TILA claims, Defendants contend they are not "creditors" under TILA, and, regardless, any TILA claims would be time-barred because violations under the act occur at the time of the loan transaction.   (Doc. 22 at 22-24).   The Gregorys begin their response with a four-page discussion of damages under TILA, (doc. 26 at 32-36), which is not an issue raised in Defendants' motion to dismiss and is not clearly relevant to the remainder of their argument, (*see* doc. 22-24).   Next, they address in detail the case of *Selman v. CitiMortgage,*

*Inc.*, No. 12-0441-WS-B, 2013 WL 838193 (S.D. Ala. Mar. 5, 2013),[15] which they assert is the only case Defendants rely on.  (Doc. 26 at 36-37).  The remainder of their argument explores the case of *Runkle v. Federal National Mortgage Association*, 905 F. Supp. 2d 1326, 1331 (S.D. Fla. 2012); its holding that assignees are liable for their servicers' post-origination TILA violations despite the language of 15 U.S.C. § 1641; and why this Court should follow *Runkle* instead of *Selman*.  (*Id.* at 37-44).  They do not address Defendants' statute-of-limitations argument. Defendants' reply notes they did not rely on *Selman* at all, (doc. 27 at 8 n.6); argues *Runkle* does not apply to the facts of this case, (*id.* at 7-8); and reiterates that any TILA claims would be time-barred, (*id.* at 8 n.8).

### 1.  Parties Liable under TILA

TILA provides a private right of action against "any creditor" who violates the requirements of the statute's "Credit Transactions" section, allowing actual damages as a result of the failure and, with certain limitations, statutory damages.  *See* 15 U.S.C. § 1640(a).  A "creditor" is defined for purposes of the act as:

> a person who *both* (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and* (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence . . . .

15 U.S.C. § 1602(g) (emphasis added).  As a result, the civil liability provision of TILA does not apply generally to every person the statute regulates, but only to originating creditors.

---

[15] The *Selman* court did not address the question at issue here because the *Selman* plaintiffs did not rebut the defendants' arguments beyond a conclusory reference to § 1641 and the court refused to develop their argument for them.  *See* No. 12-0441-WS-B, 2013 WL 838193, at *15 & n.24.

However, this liability may be extended to downstream assignees[16] in consumer credit transactions secured by real property where two requirements are met:  (1) "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter," *id.* § 1641(e)(1)(A), and (2) "the assignment to the assignee was voluntary," *id.* § 1641(e)(1)(B).  TILA does not define "disclosure statement," but the Eleventh Circuit has recently held it refers to "a document provided before the extension of credit that sets out the terms of the loan." *Evanto v. Fed. Nat. Mortgage Ass'n*, No. 15-11450, 2016 WL 788120, at *1 (11th Cir. Mar. 1, 2016).  Consequently, assignees can only be held liable for violations occurring in the original disclosure documents because any subsequent disclosure violation "is not a violation 'apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter,'" *id.* (quoting 15 U.S.C. § 1641(e)(1)(B)).[17]

Although *Evanto* and *Runkle* were technically addressing different provisions, the language at issue is identical.[18]  Therefore, the *Evanto* case effectively abrogates *Runkle*, which,

---

[16] Servicers are similarly left out of the TILA civil liability provision, but there is no comparable extension of liability for them as there is for assignees.  It has been repeatedly held that, even though TILA imposes duties on servicers, it does not impose civil liability on them, *see Khan v. Bank of New York Mellon*, 849 F. Supp. 2d 1377, 1379 (S.D. Fla. 2012); *Runkle*, 905 F. Supp. 2d at 1331 (noting this point in its discussion of *Khan*), *order vacated in part on other grounds on reconsideration*, No. 12-61247-CIV, 2012 WL 6554755 (S.D. Fla. Dec. 10, 2012); *Davis v. Greenpoint Mortgage Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070221, at *4 (N.D. Ga. Mar. 1, 2011), *report and recommendation adopted in relevant part, rejected in part on other grounds*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222 (N.D. Ga. Sept. 19, 2011).  The Gregorys do not appear to argue either of Defendants is liable directly as a servicer.
[17] Although the *Evanto* plaintiff argued this strict textual reading of the statute retains a loophole that undercuts the objectives of the statute, the Eleventh Circuit rejected the suggestion the court should, therefore, create a remedy not present in the statute, stating that the court's job "is to follow the text." No. 15-11450, 2016 WL 788120, at *3.
[18] The *Runkle* court was addressing § 1641(a)'s general extension of liability to assignees where "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement," *see* 905 F. Supp. 2d at 1332, and the *Evanto* court was addressing

28

in large part, is based on policy reasons like those rejected in *Evanto*, *see Runkle*, 905 F. Supp. 2d at 1332 (noting assignees are no different than creditors in this respect and "[s]uch a rule would allow assignees to retain the sloppiest servicers without any risk"), and, in remaining part, is based on the exact opposite conclusion to that reached in *Evanto* regarding identical language, *id.* at 1332-33 (rejecting Fannie Mae's argument "an assignee can only be liable for documents created at the time of the origination of the loan (Fannie Mae's interpretation of 'disclosure documents'), which documents were assigned to the assignee" and concluding the language should be construed to find assignee vicarious liability).   In contrast, the *Evanto* decision vindicates the decisions in *James v. Nationstar Mortgage, LLC*, 92 F. Supp. 3d at 1197-98, and *Signori v. Fed. Nat. Mortgage Ass'n*, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013):  even though there is nothing in TILA suggesting § 1641's limitations were intended to prevent TILA liability for assignees' or their agents' own actions, assignees cannot be liable for servicing violations because the courts may not "rewrite a statute to fit what a court thinks Congress should or might have said, but did not."  *James*, 92 F. Supp. 3d at 1196.  TILA's civil liability provision in § 1640(a) creates a right of action against originating creditors, not assignees, and, under *Evanto*, TILA's assignee liability provision in § 1641(e) does not extend that right of action to assignees where the violation occurred after the original disclosure documents.

In the instant case, despite the Gregorys' assertion "Defendants, [sic] are covered by the Act as it [sic] . . . is the person to whom the transaction which is the subject of this action is

§ 1641(e)'s extension of assignee liability regarding consumer credit transactions secured by real property where "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter," *see* No. 15-11450, 2016 WL 788120, at *1.  The *Evanto* court's discussion of the term "the disclosure statement" as being a document provided before closing applies to either provision.  Regardless, § 1641(e)'s provision for consumer credit transactions secured by real property is the one applicable here.

initially payable," (doc. 18 at ¶ 88), the amended complaint's allegations make it clear none of the defendants are the person to whom the transaction was initially payable, (*id.* at ¶¶ 1, 3, & 16). Although the amended complaint is not terribly clear on the relationship between the three defendants, they are all, at most, assignees of the original creditor. As a result, they could only be held liable for TILA violations in the original disclosure statement and not for any servicing violations subsequent to that document.

### 2. TILA Statute of Limitations

Because Defendants, as assignees, can only be liable under § 1641 for violations in the original disclosure statement, the only TILA claims the Gregorys could assert against them are all time-barred. General TILA actions must be brought "within one year from the date of the occurrence of the violation" or, if brought under §§ 1639, 1639b, or 1639c, "before the end of the 3-year period beginning on the date of the occurrence of the violation." 15 U.S.C. § 1640(e). A TILA "violation 'occurs' when the transaction is consummated." *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984). The loan at issue here was signed on January 18, 2006, almost ten years before this case was filed. Because the only violations for which Defendants could be liable were those that occurred in the original 2006 disclosure statement assigned to them, any violations would be time-barred.

Accordingly, the Gregorys' claims under the Truth in Lending Act (Count X) are due to be dismissed.

### H. Real Estate Settlement Procedures Act (Count XI)

Defendants contend the Gregorys do not allege either that their alleged qualified written requests ("QWR") sought information required to be provided under the statute or that any damages resulted from the alleged failure to respond. (Doc. 22 at 25-26). The Gregorys'

argument in their response focuses solely on whether Deutsche Bank has vicarious liability for its agent's violations of RESPA.  (Doc. 26 at 50-52).  They do not address the QWR or damages arguments.  Defendants' reply merely notes their motion to dismiss does not make any vicarious liability arguments because they contend the Gregorys have failed to properly allege the underlying RESPA liability.  (Doc. 27 at 10).

### 1.  "Qualified Written Request" Allegations

Under RESPA, a servicer of a federally related mortgage loan must, at least, provide a written response acknowledging receipt of any "qualified written request" from a borrower within five days.  12 U.S.C. § 2605(e)(1)(A).  A "qualified written request" ("QWR") is any written correspondence that is not on a payment coupon or other payment medium supplied by the servicer and

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B).  Therefore, "to adequately state a claim that a loan servicer violated its duty to timely respond under § 2605(e), a plaintiff must first allege that a QWR meeting the statutory definition was actually submitted."  *Tallent v. BAC Home Loans*, No. 2:12-CV-3719-LSC, 2013 WL 2249107, at *3 (N.D. Ala. May 21, 2013).   In total, the amended complaint's RESPA-specific allegations are:

> 96. Defendants violated the Real Estate Settlement Procedures Act (REPA) [sic] by failing to acknowledge or respond to Gregorys' Qualified Written Request (QWR).  Defendant violated the Real Estate Settlement Procedures Act (REPA) [sic] by failing to acknowledge or respond to Gregorys' Qualified Written Request (QWR) within in the time provided by federal law.

> 97. The Gregorys made a Qualified Written Request pursuant to RESPA to Defendants on August 29, 2014 and February 13, 2015 which were sent by

certified mail.  It was signed for by Defendants acknowledging receipt of the QWR.  Defendants never acknowledged receipt of the QWR request and never responded to it.  Defendants' failure to acknowledge and properly respond to the QWR request is a violation of RESPA or the Dodd-Frank Act. Because of said violations of said acts, the Gregorys were damaged because they were not informed of the information regarding their loan.  Because the Defendants failed to give this information to the Gregorys, they were not able to stop the foreclosure on their home.  Accordingly, the Gregorys are entitled to damages from the Defendants.  Plaintiffs suffered damages by Defendants' failure to comply with the RESPA law because they were unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure sale was set.

(Doc. 18 at ¶¶ 96-97).   The general factual allegations do not mention this alleged correspondence at all.  (*See id.* at ¶¶ 1-27).

The allegations establish facts from which one can infer the alleged QWR was in writing (because it was sent by mail), but there are no allegations it included information sufficient to identify the borrowers or their account or that it included either a statement of the reasons for the Gregorys believing there was an error or sufficient details for Defendants to respond to the request.  Because the Gregorys did not follow the best practice of attaching a copy of the QWR to the complaint and there are no factual allegations in the amended complaint establishing the alleged correspondence complied with the requirements of the statute so as to invoke Defendants' duty to respond, they have not sufficiently established their alleged correspondence were QWRs.  *See Tallent*, No. 2:12-CV-3719-LSC, 2013 WL 2249107, at *4.

### 2.  Damages Allegations

Under the mortgage loan servicing provision of RESPA, anyone who fails to comply is liable for each failure to an individual borrower for:

(A) any actual damages to the borrower as a result of the failure; and
(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f)(1).  "The pleading of damages claims is interpreted liberally, particularly given that RESPA is a consumer protection statute that is remedial in nature."  *Davis v. Greenpoint Mortgage Funding, Inc.*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222, at *4 (N.D. Ga. Sept. 19, 2011) (citing *McLean v. GMAC Mortgage Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010)).  This liberal construction may include non-pecuniary loss, *see McLean*, 398 F. App'x at 471, but it certainly includes pecuniary damages related to the RESPA violation, *Davis*, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222, at *4.  In the context of the Privacy Act, the Eleventh Circuit found actual pecuniary damages properly alleged for purposes of Rule 12(b)(6) where the plaintiff had alleged unlawful disclosures "had a substantial economic and noneconomic impact upon his livelihood, including loss of prospective clients as an attorney."  *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1383 (11th Cir. 2010) (internal quotation marks omitted).[19]

In the instant case, the Gregorys have alleged similar damages caused to Jonathan Gregory's business relationships, resulting in "loss of income from the loss of some business clients due to the damage to his reputation from the publication of the false information in the newspaper regarding the default and foreclosure sale."  (Doc. 18 at ¶ 25).  The Gregorys allege these damages are related to the RESPA violations because "they were unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure sale was set."  (*Id.* at ¶ 97).  Had the Gregorys sufficiently alleged facts to

---

[19] Although disclosure damages are slightly more attenuated under RESPA than they would be under the Privacy Act (which makes the disclosure itself unlawful), courts have found a third party's denial of credit to the borrower due to the violator's credit disclosures is recoverable pecuniary damages under RESPA.  *See McLean v. GMAC Mortgage Corp.*, 595 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009) (citing *Cortez v. Keystone Bank, Inc.*, No. 98-2457, 2000 WL 536666, *12 (E.D. Pa. May 2, 2000), and *Hutchinson v. Delaware Savings Bank FSB*, 410 F. Supp. 2d 374 (D.N.J. 2006)), *aff'd*, 398 F. App'x 467 (11th Cir. 2010).

establish a statutory duty was breached, they would have sufficiently alleged damages to raise their entitlement to relief above the speculative level.

However, because the Gregorys failed to properly allege their correspondence consisted of QWRs, their claims under RESPA (Count XI) are due to be dismissed.

## I.  Fair Credit Reporting Act (Count XII)

Defendants contend the Gregorys failed to allege the furnisher was notified of the dispute submitted to the credit reporting agency.  (Doc. 22 at 27-28).  The Gregorys' response states a consumer has a private cause of action against a furnisher who fails to perform a reasonable investigation of a dispute after receiving notice from a credit bureau, then ends with the conclusory statement "the Gregorys have properly alleged that SPS violated FCRA" without pointing to any allegations supporting the elements of the claim.  (Doc. 26 at 45-46).

An essential element of an FCRA investigation claim against a furnisher of information to credit reporting agencies is that the furnisher was notified of the dispute by the credit reporting agency.  *See* 15 U.S.C. § 1681s-2(b)(1); *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 861 (11th Cir. 2013) (affirming summary judgment because the evidence established the defendant had been notified of the dispute only by the plaintiff).  Failure to allege this element is fatal to the claim.  *See Bush*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *5; *Muldrow v. Capital One Servs., LLC*, No. 4:15CV207-MW/CAS, 2015 WL 9897754, at *3 (N.D. Fla. Dec. 17, 2015); *Rice v. JPMorgan Chase Bank NA*, No. 7:14-CV-00318-LSC, 2014 WL 3889472, at *6 (N.D. Ala. Aug. 5, 2014) (citing *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (explaining that to survive a Rule 12(b)(6) motion a plaintiff must "include factual allegations for each essential element of his or her claim")).

Although the Gregorys allege they notified Defendants and the credit reporting bureaus, (doc. 18 at ¶ 99), they do not allege the credit reporting bureaus notified Defendants of the dispute.   In fact, the Gregorys' allegation is a substantively verbatim copy of the allegation rejected in *Rice*.   *Compare id. with Rice*, No. 7:14-CV-00318-LSC, 2014 WL 3889472, at *6. As such, the conclusion is the same:   "According to this pleading, [the Gregorys] informed both [Defendants] and various credit agencies about a dispute, but [they have] not pleaded any facts to suggest that the credit bureaus then contacted [Defendants] as required by the statute. Thus, [the Gregorys have] pleaded no facts as to an essential element of this claim, and the motion to dismiss is due to be granted," *Rice*, No. 7:14-CV-00318-LSC, 2014 WL 3889472, at *6, and the Gregorys' claim under the FCRA (Count XII) dismissed.

### J.   Fair Debt Collection Practices Act (Count XIII)

Defendants contend (1) the Gregorys' FDCPA claims are too conclusory to put them on notice of the claims against them, and (2) the FDCPA imposes liability on "debt collectors" and there are no allegations of facts to support the conclusion Defendants fall under the statutory definition.   (Doc. 22 at 28-31).   The Gregorys' response begins with the "debt collector" argument, setting out the law consistent with Defendants' brief then merely concluding that, "[i]n the complaint, the Gregorys clearly assert that the Defendants are 'debt collectors' under the FDCPA." (Doc. 26 at 48).   It then references three of the six sections the Gregorys' amended complaint asserts and attempts to explain why the allegations support those claims.   (*Id.* at 49-50).

#### 1.   "Debt Collector" Allegations

The FDCPA imposes liability on "debt collectors" who fail to comply with the provisions of the act.   *See* 15 U.S.C. § 1692k(a).   Under the FDCPA, a "debt collector" is defined as:

any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.  For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).  This generally does not include the person to whom the debt is owed unless (1) he acquired the debt while (a) in default and (b) solely for the purpose of collecting for another or (2), if collecting his own debts, uses another name indicating a third-party is collecting the debt.  *See Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313-14 (11th Cir. 2015) (citing 15 U.S.C. § 1692a(4); *id.* § 1692a(6)).  The definition also explicitly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person . . . ."  15 U.S.C. § 1692a(6)(F)(iii).  "[T]his exclusion include[s] 'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing.'"  *Davidson*, 797 F.3d at 1314 n.4 (quoting S.Rep. No. 95-382, at 3-4).

Although the Gregorys do clearly assert Defendants and Co-Defendant are "debt collectors" under the FDCPA, (doc. 18 at ¶ 1), they never allege facts to support that legal conclusion.  The only other time "debt collector" is used in the amended complaint is in an allegation Defendants failed to identify themselves as "debt collectors."  (*Id.* at ¶ 112).  This allegation merely assumes the truth of the previous legal conclusion.  The amended complaint's factual allegations do not allege facts to support the inference Defendants are in "any business

36

the principal purpose of which is the collection of any debts," 15 U.S.C.A. § 1692a(6), that they "regularly collect[] or attempt[] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," *id.*, or that the loan was in default (or being treated as in default) when Defendants acquired it, *id.* § 1692a(6)(F)(iii); *Davidson*, 797 F.3d at 1312 n.2.

In fact, as previously noted, the amended complaint does not allege the timing of transfers or the relationship between the defendants clearly at all.  It is variously alleged the loan was "transferred and sold to Deutsche Bank and Bank of America," (doc. 18 at ¶ 3), the loan was "sold, assigned or transferred by Bank of America to Defendant SPS," (*id.* at ¶ 16), and SPS was the "new servicer," (*id.* at 17).  It is never alleged in what order these relationships occurred or the status of the loan at the time of transfer or assignment.

The closest the amended complaint comes to the latter allegation is the alleged statement of SPS employees "that they had no record of the loan modification and that the [Gregorys'] account was still showing past due."  (*Id.* at ¶ 18).  This implies that, when they received the loan, they considered it to be in the same "past due" condition as it was before the alleged modification in December 13, 2013.  However, "past due" is an ambiguous term that, depending on the circumstances, could mean "in default" or merely "delinquent," *see Bohringer v. Bayview Loan Servicing, LLC*, No. 1521053CIVALTONAGAOS, 2015 WL 6561419, at *6 (S.D. Fla. Sept. 10, 2015), and the amended complaint asserts SPS employees did not refer to the account as "in default" and subject to foreclosure until the Gregorys called again at a later date.  (*Id.* at 19).  Because the Gregorys have not alleged facts to support the conclusion either of Defendants is a "debt collector" for purposes of the FDCPA, their claim under the act, (Count XIII) is due to be dismissed.

37

### 2.  Sufficiency of the Allegations, Generally

Defendants also assert the allegations of paragraph 111 of the amended complaint do not comply with Rule 8(a) because they are conclusory allegations that do not show Defendants "the nature and substance of the communications supposedly giving rise to liability."  (Doc. 22 at 29) (citing *Hall v. HSBC Mortg. Serv's, Inc.*, 581 F. App'x 800, 803 (11th Cir. 2014)). (*See also* doc. 27 at 9-10).   The Gregorys contend their "factual allegations are sufficient to support each of these assert[ed] FDCPA claims against the Defendants" (despite only mentioning three of the six alleged in the amended complaint).   (Doc. 26 at 49-50).   Although the amended complaint appears to contain sufficient non-conclusory allegations to support violations of most of the FDCPA sections allegedly violated, (*see* doc. 18 at ¶¶ 18, 19, 23, 25, 112, 113 & 114), it is not always clear which facts support which claims because the FDCPA count does not fully comply with Rules 8(a) and 10(b).

Complaints must not only comply with Rule 8's notice pleading requirement, *see* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."), but also Rule 10's requirement to include numbered paragraphs, "each limited as far as practicable to a single set of circumstances," Fed. R. Civ. P. 10(b).   "These rules, working together, require a plaintiff 'to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading' and allow the court to determine which facts supported which claims and whether the plaintiff had stated any claims upon which relief can be granted." *Washington v. Bauer*, 149 Fed. App'x 867, 869-70 (11th Cir. 2005) (quoting *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996)).

The Gregorys' FDCPA claim, however, merely incorporates all previous factual allegations;[20] sets out, in a single paragraph, all of the provisions of the FDCPA allegedly violated; and, without any reference to which provision they allegedly support, combines new facts, apparently supporting multiple provisions, together in the last two paragraphs.  (*See* doc. 18 at ¶¶ 111-14).  Although the facts may be sufficient to support the claims asserted, the Court declines to spend more time deciphering the connections.  In light of the fact the claim is due to be dismissed on other grounds, the Gregorys will be required, should they choose to move to amend, to re-plead this section so as to make it clear which of the alleged facts are intended to support which alleged statutory violation.

## III. Conclusion

Accordingly, Defendants' motion to dismiss, (doc. 22), is **GRANTED**, and Counts I through V and VII through XIV of the Gregorys' amended complaint are **DISMISSED**. Specifically, the abandoned claims in Counts III, VIII, IX, and XIV; the preempted state-law claims relating to the responsibilities of persons who furnish information to consumer reporting agencies; the negligence and wantonness claims in Counts I and II purportedly based on RESPA or the obligations arising from the mortgage contracts; the state-law wrongful foreclosure claim under Count IV; and the time-barred claims under Count X are **DISMISSED WITH PREJUDICE**.  To the extent the Gregorys can re-plead the other claims consistent with this Order, those claims are **DISMISSED WITHOUT PREJUDICE**. The Gregorys have until **September 14, 2016**, to file a motion to amend with a proposed second amended complaint

---

[20] In fact, the FDCPA count incorporates all of the factual allegations twice because, like all of the other counts in the complaint, it incorporates all of the paragraphs that came before it. (*See* doc. 18 at ¶ 110).  This is the defining characteristic of one type of shotgun pleading, *see Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015), and prevents Defendants and the Court from knowing exactly which facts are relevant to this claim.

consistent with this Order.  If the Gregorys do not file a motion to amend by that date (or have not otherwise sought to extend the deadline), the claims for which leave to amend was granted will be deemed abandoned and dismissed with prejudice.

DONE this the 31st day of August 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE